UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUANN RUGGERI, RICARDO JARAMILLO, and PRAKASH NAIK, on behalf of themselves and all others similarly situated,<br>    *Plaintiff*s,<br><br>        *v.*<br><br>BOEHRINGER INGELHEIM CORP.,<br>    *Defendant.* | No. 06-cv-1985 (JBA) |

**RULINGS ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' RULE 23 CLASS ALLEGATIONS AND PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

The plaintiffs brought this suit in December 2006 against the defendant Boehringer Ingelheim Corp., their former employer, for redress of what they assert is the defendant's failure to properly remunerate them for their overtime work in contravention of both federal law and the law of two states. The defendant has moved to dismiss the plaintiffs' state law claims, and the plaintiffs have moved for conditional certification of their Fair Labor Standards Act class and equitable tolling of the applicable statute of limitations. For the reasons set forth below, the defendant's motion will be granted, and the plaintiffs' motion will be granted in part and denied in part.

I.   **Procedural and Factual Background**

Plaintiffs Luann Ruggeri, Richard Jaramillo, Brian Farquhar, and Prakash Naik were employees of pharmaceutical manufacturer Boehringer working as sales

1

representatives. They allege that Boehringer contravened the Fair Labor Standards Act ("FLSA") by improperly classifying them as exempt from the statute's overtime pay provisions and shortchanging their pay envelopes accordingly when they worked more than forty hours per week, which the plaintiffs allege was a frequent occurrence. The plaintiffs press their federal claims under FLSA's collective action mechanism, 29 U.S.C. § 216(b), over which this Court has federal question jurisdiction, 28 U.S.C. § 1331.

In February 2007, the plaintiffs amended their complaint to add claims arising under Oregon, Illinois, and California wage and hour laws [Doc. # 15-2], which they seek to prosecute as Rule 23 class actions. In their second amended complaint [Doc. # 31] they withdrew the Oregon law claims (and the Oregon plaintiff, Brian Farquhar), but retained the Illinois and California counts.

In the second amended complaint, the plaintiffs allege that they are residents of Florida (Ruggeri), California (Jaramillo), and Illinois (Naik), and that Boehringer Ingelheim is a Delaware corporation with its principal place of business in Connecticut. (2d Am. Compl. at ¶ 7.) The plaintiffs claim that they each "worked hours in excess of forty (40) hours per workweek" (*id.* at ¶¶ 8-10), and that they "have sustained substantial losses from Defendant's failure to pay them overtime compensation" (*id.* at ¶ 18). As to the number of potential members in their state-law classes, the plaintiffs assert that the proposed California and Illinois classes have more than two hundred members each. (*Id.* at ¶¶ 26, 35.)

The defendant now moves to dismiss the plaintiffs' state law claims, arguing that this Court should decline to exercise its supplemental jurisdiction over those claims, principally on the basis that the FLSA collective action mechanism and the Fed. R. Civ. P. 23 class action form are mutually exclusive. The plaintiffs, in turn, argue that the Court has original jurisdiction over the state law claims by virtue of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), and that even if it does not, that the Court should exercise its supplemental jurisdiction over the state law claims. The plaintiffs also move for conditional certification of their FLSA collective action and for equitable tolling of its statute of limitations.

## II. Applicability of CAFA

Section 4 of CAFA expanded federal district courts' diversity subject matter jurisdiction to include certain class actions in which the parties are not of completely diverse citizenship. Specifically, the district courts now have jurisdiction over any class action having more than 100 members, 28 U.S.C. § 1332(d)(5)(B), at least $5,000,000 in controversy, § 1332(d)(2), and at least one plaintiff and one defendant of different states, § 1332(d)(2)(a)–(c). The burden of establishing CAFA jurisdiction lies with "the party asserting federal jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). In weighing whether the party invoking CAFA jurisdiction has met its burden, the Court looks to the pleadings, *id.* at 56–57, to see if the party attempting to establish federal

jurisdiction has proved that a "reasonable probability" exists that all the required elements are satisfied, *id.* at 58 (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).

Here, the plaintiffs have pled facts which demonstrate a reasonable probability that the minimal diversity requirement of § 1332(d)(2) has been met, given that the defendant is alleged to be a citizen of Delaware and Connecticut, *see* 28 U.S.C. § 1332(c)(1) (deeming corporations to be citizens of the state(s) in which they are incorporated and have their principal places of business), and that the plaintiffs reside in three states other than Delaware and Connecticut. It is similarly reasonably probable that the number of potential class members for the plaintiffs' state law claims exceeds the CAFA threshold of 100 given that Boehringer is alleged to do business nationally and has, does, or will employ more than 200 sales representatives in both California and Illinois. The remaining element—$5,000,000 in controversy excluding fees and costs, 28 U.S.C. § 1332(d)(2)—is problematic, however. The pleadings contain no mention of the amount of money to which the plaintiffs believe their overtime efforts entitle them or any facts providing the means for making such a calculation. The several damages provisions of the California statutes yield some measure of potential damages. (*See, e.g.*, 2d Am. Compl. at ¶¶ 65 (asserting entitlement to "penalties . . . equal to their regular rate of pay for period of 30 days"), 68 ("the greater of all actual damages or one hundred dollars . . . for the initial pay period in which a violation occurs and two hundred dollars . . . for each

violation in a subsequent pay period").) But even with the allegations of potential members of plaintiffs, there is no set of numbers, be it pay periods or rate of pay, by which to multiply these numbers to arrive at the $5,000,000 CAFA floor. Thus, plaintiffs have failed to meet their burden to demonstrate a reasonable probability that the amount in controversy in their class action claims equals or exceeds $5,000,000, and thus fail to prove original jurisdiction under CAFA.

### III. Supplemental Jurisdiction over the State Law Class Action Claims

In addition to their FLSA overtime claim, the plaintiffs bring a variety of claims under California and Illinois law. The California claims are: an unfair business practices claim (Count 2, Cal. Bus. & Prof. Code § 17200 *et seq.*), an overtime claim (Count 3, Cal. Lab. Code §§ 510, 1194, 1194.5), a claim alleging that the defendants failed to pay them the overtime compensation they were owed within seventy-two hours of their termination (Count 4, Cal. Lab. Code §§ 201-203), a wage and hour record-keeping claim (Count 5, Cal. Lab. Code §§ 226, 1174, 1174.5), and a meal and rest period claim (Count 6, Cal. Lab. Code §§ 226.7, 512). Under Illinois law, the plaintiffs press a single overtime claim (Count 7, 820 Ill. Comp. Stat. 115/4).

The plaintiffs assert that even if this Court does not have original jurisdiction under CAFA to hear their state law class action claims, it should nonetheless exercise supplemental jurisdiction over those claims to hear both the FLSA and state law claims

together because they "raise substantially the same issues and turn on the same body of proof regarding pharmaceutical sales representatives' job duties." (Pl.'s Opp'n Dismissal at 11.) The defendant responds that the two bodies of state law in play in the plaintiffs' complaint—Illinois and California—will eclipse the lone federal claim to an extent which counsels dismissing those claims.

The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), grants to the district courts of the United States "in any civil action of which the district courts have original jurisdiction . . . supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The grant of supplemental jurisdiction means that district courts "may decide state law claims not within their subject matter jurisdiction if the federal and state law claims 'derive from a common nucleus of operative fact' and comprise 'but one [case].'" *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 539 (2002) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). However, district courts are not obligated to exercise supplemental jurisdiction; they may decline if, in relevant part, "the claim raises a novel or complex issue of State law," or "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(1)–(2). Thus, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (internal quotation omitted).

Although the plaintiffs urge that resolution of the state claims will involve the same core question for all three jurisdictions' law—*i.e.*, whether or not the plaintiffs were exempted from the requirement that they be paid overtime—two considerations weigh strongly in favor of declining supplemental jurisdiction over the state law claims. First, the number of California claims suggests their significant potential to overshadow the lone FLSA overtime claim at the summary judgment and/or trial stage. While the sole question at issue in the FLSA claim is whether or not the plaintiffs as pharmaceutical representatives are exempted from overtime pay under federal law, the California counts will take this Court into claims and defenses pertaining to the propriety of the defendant's business practices, record-keeping procedures, and even its meal and rest period policies—unique to the California law claims. The presence of Illinois law only compounds the problem, putting this Court in the position of construing two states' labor laws in addition to the federal claim over which the Court has original jurisdiction, with the result that the state laws at issue in counts two through eight will likely require more attention and thus predominate over the single federal count.

The second, and perhaps more substantial, consideration which counsels declination of supplemental jurisdiction over the state law claims is the tension between the forms of action proposed for the federal and state class claims: the plaintiffs seek conditional certification as a FLSA collective action under 29 U.S.C. § 216(b), which permits the plaintiffs to conduct the litigation "for and in behalf of . . . themselves and

other employees similarly situated." FLSA collective actions are opt-in only, with each potential class member barred from joining "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* For their state law claims, on the other hand, the plaintiffs propose to proceed under Fed. R. Civ. P. 23(b)(3), under which putative class members would be bound by the outcome of the litigation unless they opted out of the class. *See* Fed. R. Civ. P. 23(c)(2)(B) (setting forth notice requirement for R. 23(b)(3) classes); *see generally Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (discussing differences between the Rule 23(b) class types).

As this Court has noted before, the opt-in requirements of FLSA were designed by Congress to limit collective actions under § 216(b) to employees who assert claims in their own right. Permitting plaintiffs to shoehorn into this delimited collective federal statutory action their state law opt-out class claims on behalf of this same category of employees, even if just limited to their overtime pay claims, "would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." *Neary v. Metro. Prop. & Cas. Ins. Co.*, 472 F. Supp. 2d 247, 250 (D. Conn. 2007) (internal quotations and citations omitted). Therefore, in the interest of efficiently managing plaintiffs' FLSA claim and collective action without risk of predomination or contravention by their Rule 23(b)(3) class claims and procedures, the defendant's motion to dismiss the state law claims will be granted.

### IV. FLSA Collective Action Certification

As the plaintiffs have brought their FLSA claims on behalf of themselves and other Boehringer sales representatives, the plaintiffs now move for conditional certification of their collective action, and for notification of other potential class members. The plaintiffs also move for equitable tolling of FLSA's statute of limitations until potential members have a chance to join the action.

#### A. Conditional Certification and *Hoffman-LaRoche* Notification

The plaintiffs propose their class to consist of:

> any and all employees who (a) have at any time from approximately December 11, 2003 to [date of filing of order giving notice], held job positions titled or classified as Primary Care Sales Representative, Specialty Sales Representative, Institutional Sales Representative, HIV Sales Representatives, or Senior Care Representatives; and (b) did not receive overtime wages for overtime hours worked.

(Pl.'s Proposed Order [Doc. # 65], Ex. A at 2 (alteration in original).) The defendants object, deeming the plaintiffs' affidavits to be "conclusory, speculative, and hearsay-laden." (Def.'s Opp'n Cond. Cert. [Doc. # 77] at 16.) The defendants also contend that Ruggeri, Jaramillo, and Naik were only employed in a subset of the defendant's markets, and in positions which did not cover the range of job titles possible in those markets, rendering them insufficiently similar to other potential plaintiffs to warrant conditional certification and notification.

The FLSA provides plaintiffs with the option of litigating alleged violations collectively "for and in behalf of . . . other employees similarly situated," provided that

other plaintiffs affirmatively signify their intent to join the collective action in writing. 29 U.S.C. § 216(b). Following the Supreme Court's recognition that "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice" during FLSA actions, *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989), it has become "well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant" the FLSA's collective action provision, *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

Although the Second Circuit has not articulated procedures governing the order of operations in a FLSA collective action, a two-step procedure for collective action certification and notice has been used. In the initial stage, a court will look to the pleadings and affidavits to determine whether the proposed class members are similarly situated. *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007). At this initial stage of the proceedings, before discovery is completed, a class representative has only a "minimal burden to show that he is similarly situated to the potential class," which requires "a modest factual showing sufficient to demonstrate" that the potential plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* at 632-33; *accord Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). At such preliminary stage, the decision to conditionally certify proceeds "upon a minimal evidentiary showing that plaintiff[s] can meet the substantive requirements" of

§ 216(b). *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 219 (D. Conn. 2003). As such, "[t]he plaintiffs need not be identically situated to potential class members," but must simply demonstrate "some identifiable factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged discrimination." *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988); *see also Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 618 (D. Conn. 2007) (collecting cases).

At the second stage of the certification, which occurs following the close of discovery, the Court, "often prompted by a motion for decertification by the defendant, will examine all evidence then in the record to determine whether there is a sufficient basis to conclude that the proposed class members are similarly situated." *Neary*, 517 F. Supp. 2d at 618 (internal quotation omitted). Should such evidence not be forthcoming, the Court will decertify the class; otherwise, the matter will proceed to trial as a collective action.

In her declaration in support of conditional certification and notification, Ms. Ruggeri sets forth a number of facts suggestive of company policies and procedure which support conditional certification: she states that the defendant "always treated me as being ineligible for overtime pay" (Ruggeri Decl. [Doc. # 59] at ¶ 4); that the defendant's automated time and attendance system "did not allow me to record hours worked before 8 a.m., after 5 p.m., or on the weekends" (*id.*); and that the defendant's training materials

"made clear that pharmaceutical representatives were expected" to visit sales contacts during the 8 a.m. to 5 p.m. hours and then "handle administrative duties" outside of those hours (*id.* at ¶ 5).  Ms. Ruggeri states that she often "worked with other pharmaceutical representatives on weekends at conferences that we were required to attend," in addition to "often attend[ing] sales meetings with other representatives prior to 8 a.m." (*Id.*)  During her period of employ with the defendant, Ms. Ruggeri avers that she "was simply made to understand that [she] was not eligible for overtime pay as a matter of fact." (*Id.* at ¶ 6.)  Based upon her observations of other sales representatives at Boehringer with whom she worked, Ms. Ruggeri alleges that the other representatives were "principally engaged in the same core work" and were "subject to the same type of expectations, oversight, and supervision."  (*Id.* at ¶ 9.)  Mr. Naik and Mr. Jaramillo have tendered virtually identical statements in their affidavits [Docs. # 60 and 61, respectively], as have plaintiff's witnesses David Garman [Doc. # 62], James Bitz [Doc. # 63], and Peter Batchkoff [Doc. # 64].

In light of the relatively low conditional certification standard which plaintiffs must meet, the defendant's insistence that the "conclusory" allegations of the plaintiffs' FLSA affidavits place conditional certification and notification out of reach is not well-taken.  Regardless of whether each of the plaintiffs' affidavits asserts conclusions of law or fact properly left to the Court or the jury, each of the affiants sets forth facts which show that they were expected to routinely work more than forty hours weekly and were not

compensated for those additional hours as a result of the defendant's practice of exempting them from overtime pay. Excising statements which contain hearsay does not change the weight of the central facts asserted: leaving aside what the affiants recount of their conversations with other Boehringer sales representatives and the beliefs which the affiants formed regarding the defendant's overtime practices, Ruggeri, Naik, Jaramillo, Garman, Bitz, and Batchkoff have sworn to the fact that they themselves regularly worked more than forty hours per week and were denied overtime compensation by virtue of a Boehringer policy or practice classifying them as exempt. Moreover, the affiants have sworn to these identical conditions existing in the defendant's operations in three different states: California (Batchkoff, Garman, Jaramillo), Florida (Bitz and Ruggeri), and Illinois (Naik).

Unlike the cases relied upon by the defendants, the plaintiffs and their witnesses have not made inconsistent allegations which undercut their theory,[1] have not failed to set forth the reasons why the plaintiffs believe themselves to be similarly situated to those who they seek to represent,[2] and have not rested upon their affidavits "which simply state that they believe other workers were discriminated against in similar ways," *H&R Block v.*

---

[1] *See McElmurry v. U.S. Bank Nat'l Ass'n.*, No. CV-04-642-HU, 2004 U.S. Dist. LEXIS 15233, at *35-*38 (D. Or. July 27, 2004) (denying FLSA conditional certification and notification where plaintiffs offered evidence of some timesheets which instructed employees to round their time down, and some which gave no instructions as to rounding).

[2] *See Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (D. Ark. 2003) (denying FLSA conditional certification and notification where the plaintiff did not address differences in job duties between the various types of employee which he sought to represent, but instead assumed "that all salaried Wal-Mart employees below officer level are similarly situated no matter what the nature of their duties").

*Housden*, 186 F.R.D. 399, 400 (D. Tex. 1999); rather, they have presented evidence of the testimony of three non-parties attesting to the same conditions.

Secondly, the defendant's assertion that FLSA claims are too individualized to be suitable for conditional certification and notification is unconvincing. The defendant cites a number of cases for the proposition that because the applicability of the FLSA overtime exemption requires an examination of each employee's job duties, this individualized factual determination will predominate over any shared questions among the class members and weigh against conditional certification of the collective action. However, the cases which the defendant cites do not support its view of the law. In *Dean v. Priceline.com*, No. 00-cv-1273, 2001 U.S. Dist. LEXIS 24988 (D. Conn. Mar. 9, 2001), the question before the court was not conditional certification of the plaintiff's FLSA claims, but whether to grant the writ of attachment for which the plaintiff had moved under Connecticut law. In *Mike v. Safeco*, 274 F. Supp. 2d at 221, the court denied conditional certification where the plaintiff "disavow[ed]" the description of his job duties tendered by the defendant and claimed that "on a task-to-task, day-to-day basis," he performed the duties of a non-exempt employee. The court declined to conditionally certify the class, noting that Mike "d[id] not challenge a Safeco policy, but rather assert[ed] that Safeco treated him in a certain way," and it would thus require a detailed inquiry into his daily activities to determine which party's description of Mike's job duties was more accurate. *Id.* Here, no such problem exists: the parties largely agree on

the job duties which the plaintiffs performed; they simply disagree over whether those duties place the plaintiffs into one of the FLSA's overtime exemptions.

To accept Boehringer's reasoning that the need to examine job duties, used to determine ultimate liability on the plaintiffs' FLSA claims, forestalls conditional certification suggests that groups of plaintiffs should rarely receive conditional class certification, which is at variance with the "minimal evidentiary showing" required of them, *Mike v. Safeco*, 274 F. Supp. 2d at 219. The defendant's detailed inquiry into each plaintiff is more properly conducted following notification and discovery. Thus, plaintiffs' collective action will be conditionally certified and the form of the Notice to be sent will be finalized with counsel forthwith.

### B. Equitable Tolling

Finally, the plaintiffs request that the statute of limitations on the necessary FLSA count be tolled to permit any potential collective action members to receive notice of the suit and opt in. The plaintiffs assert that the statute should be tolled because any failure on the part of potential collective action members to timely file suit is not their own fault, and because Boehringer has refused to voluntarily turn over information on potential class members.

Claims brought under the FLSA must be filed within two years of their accrual, or three years if a willful violation is alleged, as the plaintiffs do here. 29 U.S.C. § 255(a).

The time limitation on claims does not stop running until the named plaintiff files his or her complaint, or, in the case of collective action, until the individual joining the action files his or her written consent with the Court, 29 U.S.C. § 256(a),(b). Equitable tolling is an equitable device used to stop the statute of limitations clock "in the rare and exceptional circumstance." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation and alteration omitted). It permits courts "to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances" where a plaintiff has "been prevented in some extraordinary way from exercising his rights," *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation omitted), such as "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

  Here, the plaintiffs have not alleged any affirmative misdeed on the part of the defendant which separates potential collective action members from their legal rights, aside from the allegation that the defendant represented to its sales representatives that they were not eligible for overtime. Plaintiffs' position would effectively automatically toll § 255(a)'s time limits in virtually every FLSA overtime lawsuit in which an employer's exempt classification policy was challenged. *See Jacobsen v. Stop & Shop Supermarket Co.*, No. 02-cv-5915 (DLC), 2004 U.S. Dist. LEXIS 17031, at *12 (S.D.N.Y. 2004) ("To hold that a failure to disclose that an employee is entitled to overtime pay is sufficient to

work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime") (internal quotation omitted).  Although the plaintiffs suggest that the defendant's refusal to turn over employee records relating to possible collective action members hindered the timely filing of claims, the plaintiffs do not cite any authority for the proposition that the defendants bore a legal duty to turn over such records outside of the litigation discovery process.  The plaintiff have not made allegations which would support the exercise of this Court's equitable power to toll the statute of limitations.

## V.    Conclusion

For the reasons set forth above, the defendant's motion to dismiss the plaintiff's state law claims [Doc. ## 35, 81] is GRANTED, and the plaintiff's motion for collective action certification [Doc. # 56] is GRANTED.  Accordingly, the defendant's motion to strike the plaintiff's motion for collective action certification [Doc. # 78], and the plaintiff's counter-motion to strike that motion [Doc. # 79], are DENIED as moot.

IT IS SO ORDERED.

/s/

_____ _____
JANET BOND ARTERTON, U.S.D.J.

Dated at New Haven, Connecticut, this 26th day of February, 2008.