UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Luann Ruggeri, Ricardo Jaramillo, and Prakash Naik on behalf of themselves and others similarly situated, *Plaintiffs*,<br><br>*v.*<br><br>Boehringer Ingelheim Pharmaceuticals, Inc., *Defendant*. | Civil No. 3:06cv1985 (JBA) |

### RULING ON DEFENDANT'S MOTION FOR PERMISSION TO TAKE INTERLOCUTORY APPEAL FROM ORDER DENYING SUMMARY JUDGMENT [Doc. # 182]

In this suit Plaintiffs Luann Ruggeri, Richard Jaramillo and Prakash Naik (collectively, "Plaintiffs") claim that Boehringer Ingelheim Pharmaceuticals, Incorporated ("Boehringer" or "Defendant"), their former employer, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to pay them for their overtime work.[1] Defendant moved for summary judgment [Doc. # 141], arguing that it need not pay overtime wages to Plaintiffs and other pharmaceutical sales representatives ("PSRs") similarly situated to them because they fall within either of two exemptions to the FLSA's protections—the outside sales exemption and the administrative exemption. Plaintiffs cross-moved for summary judgment [Doc. # 140] as to the outside sales exemption. On September 29, 2008 this Court denied Defendant's motion for summary judgment and granted partial summary judgment to Plaintiffs as to the outside sales exemption [Doc. # 177], and on November 13, 2008 this Court issued an amended ruling correcting a

---

[1] The Court presumes the reader's familiarity with this case's factual background.

statement of California law in the September 29th ruling but leaving the disposition unchanged [Doc. # 204] ("Amended Ruling").[2]  Defendant now moves [Doc. # 182] for permission to take an interlocutory appeal as to this Court's ruling on the outside sales exemption. (*See* Def.'s Mem. Supp. Mot. Permission Interloc. Appeal [Doc. # 182-1] ("Def.'s Mem. Supp.") at 3.)

## I.    Standards

The propriety of an interlocutory appeal is governed by 28 U.S.C. § 1292(b), under which a district court may permit an appeal of its order when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  On its face, this statute requires the Court to find that the order on which interlocutory appeal would be taken satisfies three criteria: first, the order must "involve[] a controlling question of law"; second, there must be "substantial ground for difference of opinion" regarding such question of law; and third, immediate

---

[2] The Court's Amended Ruling is located at *Ruggeri v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 3:08cv1985 (JBA), 2008 WL 4889813, 2008 U.S. Dist. LEXIS 92659 (D. Conn. Nov. 13, 2008).  This Ruling on Defendant's Motion for Permission to Take Interlocutory Appeal, while referring to the Amended Ruling, will refer only to those parts of it that remain unchanged from the September 29th ruling because it is that ruling which Defendant seeks to appeal.  The Court amended its ruling in order to correct a statement of California law regarding the relationship between the FLSA and California labor law.  The amended portion of the Amended Ruling contains an analysis of the California Labor Code consistent with the one in this Ruling.  (*See also* Amended Ruling, slip op. at 1 n.1 (explaining amendments).)

appeal from the Court's order could "materially advance" the end of litigation. *See also Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006).

Even where these criteria are met, the Court retains discretion to deny permission for interlocutory appeal, and is mindful that "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863 (2d Cir. 1996) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). Interlocutory appeals are disfavored, and, because the procedure "was not intended as a vehicle to provide early review of difficult rulings in hard cases," a party seeking to appeal must demonstrate "exceptional circumstances" justifying it. *Williston*, 410 F. Supp. 2d at 276 (providing expanded discussion of "exceptional circumstances," and collecting cases) (citations omitted).

## II.    Discussion

Boehringer claims that there is "substantial difference of opinion . . . on whether individuals with job duties similar to [P]laintiffs fall within the outside sales exemption." (Def.'s Mem. Supp. at 2–3.)  In particular, Defendant argues that difference of opinion exists as to whether the outside sales exemption can apply where the employee has not actually consummated "sales" within the meaning of that term as defined in the FLSA.  (*Id.* at 3.)

In ruling on the parties' motions for summary judgment this Court construed the FLSA outside sales exemption to apply only where the employee had made or consummated actual "sales."  It explained:

> The regulation itself thus dictates that if employees do not make any sales and do not obtain any orders or contracts, then they cannot fit within the outside sales exemption, because such work must be their "primary duty." . . . If the employees make at least some sales or obtain at least some orders or contracts, then the outside sales exemption *may* apply, provided that such work constitutes the employees' "primary duty." . . . [The] indicia-of-sales inquiry, however, is limited to circumstances where the employee actually makes sales, and the question is whether her consummation of sales, plus her work "incidental to and in conjunction with" such consummation, is sufficient to deem sales her "primary duty."

(Amended Ruling, slip op. at 9–10 (emphasis in original; paragraph breaks omitted; citations to regulations and caselaw omitted).) Because the Court concluded that Plaintiffs did not make or "consummate" sales, it held the outside sales exemption inapplicable and declined to engage in an indicia-of-sales analysis.

Boehringer suggests that there is substantial difference of opinion as to whether this is the proper construction of the outside sales exemption. (*See* Def.'s Mem. Supp. at 2 (describing Plaintiffs' primary duty as being "to visit physicians and pharmacies for the purposes of influencing them to prescribe Boehringer pharmaceutical products" and not actually to make "sales," but arguing that "the issue on which this case turns[] is one controlling question of law," i.e., whether Plaintiffs fall within the exemption); Def.'s Reply Supp. Mot. Permission Interloc. Appeal ("Def.'s Reply Supp.") at 3 n.1 (proposing that question of law be "Whether Plaintiffs' job duties involve 'any sale, exchange, contract to sell, consignment for sale, shipment for sale or other disposition' within the meaning of the outside sales exemption to the [FLSA].").) It argues that "almost every [c]ourt that has examined the duties of pharmaceutical sales representatives for purposes of the outside sales

exemption has held that these employees do 'sell' and are properly classified as exempt" (*id.* at 3), and that "any attempt to make a distinction between a classically defined sales job and what [PSRs] do would be to point out a 'distinction without a difference' because '[n]othing in the language of the outside salesperson exemption requires an exempted employee to engage in direct as opposed to indirect sales'" (*id.* at 4 (quoting *Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1264 (C.D. Cal. 2007))). In other words, Defendant urges that the outside sales exemption may apply on the strength of an indicia-of-sales analysis alone even where the potentially exempt employee has not actually consummated any sales.

In support of these arguments Defendant points to four cases from the Central District of California in which PSRs employed by pharmaceutical companies were held to be within the outside salesman exemption of the California Labor Code; a FLSA regulation that construes broadly the term "selling"; and Magistrate Judge Margolis's February 25, 2008 discovery Ruling on Defendant's Motion for Protective Order and Plaintiffs' Motion to Compel [Doc. # 138] ("Discovery Ruling").[3] Examination of this authority reveals no substantial ground for difference of opinion regarding the Court's analysis of the outside sales exemption in this case, and therefore Defendant's motion is denied.

A.    *Narrow Construction of FLSA Exemptions*

As an initial matter, the Second Circuit has explicitly instructed that the FLSA

---

[3] Defendant also argues that "legal scholarship" points to a substantial difference of opinion (Def.'s Mem. Supp. at 3), but does not support its assertion with citation to any scholarship.

exemptions, including the outside sales exemption, be read narrowly. As this Court noted:

> Exemptions to the FLSA's overtime requirement are to be "'narrowly construed against the employers seeking to assert them and their application limited to those establishments *plainly and unmistakably* within their terms and spirit.'" *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)) (emphasis added). Therefore, "[t]he burden of invoking these exemptions rests upon the employer." *Bilyou*, 300 F.3d at 222.

(Amended Ruling, slip op. at 8–9.)

Defendant urges that because of the way the pharmaceutical industry is regulated and structured, PSRs are as close as Boehringer has to outside salespeople, and in particular that the fact that Boehringer promotes its products to physicians, but actually sells them to wholesalers, is an artifact of the regulations under which its industry operates. In rejecting the relevance of the structure and regulation of the pharmaceutical industry, this Court pointed out:

> In essence Defendant's argument is that the Court should back-fit the FLSA to the practices of the industry. To do so, however, would flip the law of this Circuit, which narrowly applies the FLSA's overtime exemptions and imposes the burden on the employer to demonstrate that its arrangements "plainly and unmistakably" fit the statute and regulations. *Bilyou*, 300 F.3d at 222. Because Defendant has not shown that Plaintiffs make sales or obtain contracts or orders, the outside sales exemption is inapplicable.

(Amended Ruling, slip op. at 30.) By suggesting that a distinction between PSRs' jobs and jobs that fit within the exemption is a "'distinction without a difference,'" Defendant and *Barnick* misconstrue both the exemption itself and the requirement of narrow construction.

B.    *The California Labor Code's Outside Salesman Exemption*

The Central District of California has had occasion to decide four cases brought by

6

PSRs under the California state labor laws. *See Menes v. Roche Labs, Inc.*, No. 2:07-cv-01444-ER-FFMx, 2008 U.S. Dist. LEXIS 4230 (C.D. Cal. Jan. 7, 2008); *Brody v. AstraZeneca Pharmaceuticals, LP*, No. CV 06-06862 ABC (MANx), slip op. (C.D. Cal. June 11, 2008); *D'Este v. Bayer Corp.*, No. CV 07-3206-JFW (PLAx), 2007 U.S. Dist. LEXIS 87229 (C.D. Cal. Oct. 9, 2007); *Barnick*, 522 F. Supp. 2d 1257. In each case the courts construed an exemption to that State's overtime pay requirement for "any individual employed as an outside salesman." CAL. LAB. CODE. § 1171. California law defines an "outside salesman" as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." CAL. CODE REGS. tit. 8, § 11070(2)(J).

Relying on *Monzon v. Schaefer Ambulance Serv., Inc.*, 224 Cal. App. 3d 16, 31 (1990), and *Nordquist v. McGraw-Hill Broad. Co.*, 32 Cal. App. 4th 555, 562 (1995), these four courts applying California law each declared that that State's labor protection law recognizes the persuasive authority of the FLSA over interpretations of the State's outside salesman exemption, and then employed factors culled from federal FLSA cases in the service of an indicia-of-sales analysis to construe California's outside salesman exemption, which was held applicable to the plaintiff-PSRs. *Barnick*, 522 F. Supp. 2d at 1262–63; *Menes*, 2008 U.S. Dist. LEXIS 4230, *4–*5; *D'Este*, 2007 U.S. Dist. LEXIS 87229, *14 n.2 & *16; *Brody* slip op. at 11–13.

Defendant argues that a substantial ground for difference of opinion exists regarding the proper construction of the *federal* outside sales exemption because these four cases applying *state* law hold that a state's outside salesman exemption encompasses employees

with job descriptions similar to those of Plaintiffs here. This argument misconstrues the nature of the relationship between state and federal law. The FLSA neither implicitly nor explicitly references, or is in any way tethered to, any state's law. Therefore, even if FLSA persuasively guides the meaning of the California Labor Code's outside salesman exemption—which it does not—it is not the case that state law persuasively guides federal law.

Defendant nevertheless justifies its reliance on these state law cases on the basis of the California outside salesman exemption being "materially identical to the FLSA's outside sales exemption." (Def.'s Mem. Supp. at 3 n.2; Def.'s Reply Supp. at 4 (using same language).). The California Supreme Court, however, has explicitly rejected that proposition. *Ramirez v. Yosemite Water Co.*, 978 P.2d 2, 20 Cal. 4th 785 (Cal. 1999). Therefore Defendant's reliance on *Menes*, *D'Este* and *Barnick*—and their misplaced reliance on generalizations in *Monzon* and *Nordquist* that interpretations of FLSA's outside sales exemption are persuasive guides for applying California's outside salesman exemption—is unpersuasive.

In *Ramirez*, the California Supreme Court expressly held it to be error to rely on federal regulations or interpretations of the FLSA to interpret the California Labor Code's outside sales exemption. Rejecting a lower state court's reliance on interpretations of the FLSA in interpreting the California outside salesman exemption—which was then part of a Wage Order of the California Industrial Welfare Commission ("IWC") and is now codified at Cal. Code Regs. tit. 8, § 11070(2)(J)[4]—the *Ramirez* court explained:

---

[4] As *Ramirez* explained, "[t]he IWC is the state agency empowered to formulate regulations (known as wage orders) governing minimum wages, maximum hours, and overtime pay in the State of California." *Ramirez*, 978 P.2d at 8, 20 Cal. 4th at 795

> Those federal regulations to which the Court of Appeal looked for guidance [in interpreting California's outside sales exemption] differ substantially from the wage order. . . . By choosing not to track the language of the federal exemption and instead adopting its own distinct definition of "outside salespersons," the IWC evidently intended to depart from federal law and to provide, at least in some cases, greater protection for employees. . . . In confounding federal and state labor law, and thereby providing less protection to state employees, the Court of Appeal and the trial court departed from the teaching that where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced.

*Ramirez*, 978 P.2d at 9–10, 20 Cal. 4th at 796–98. Instead of following or relying on interpretations of the FLSA outside sales exemption, courts applying California's outside sales exemption should make an examination "into the *realistic* requirements of the job," and especially "how the employee actually spends his or her time." *Ramirez,* 978 P.2d at 13, 20 Cal. 4th at 802.[5] *See also In Wells Fargo Home Mortg. Overtime Pay Litig.*, No. MDL 06-1770 MHP, 2007 WL 3045995, *7, 2007 U.S. Dist. LEXIS 77525, *21–*22 (N.D. Cal. Oct.

---

(citation omitted). The IWC was empowered to adopt Wage Order No. 7-80, and thus that wage order is entitled to judicial deference. *Id.*, 978 P.2d at 11–13, 20 Cal. 4th at 799–801.

The portion of IWC Wage Order No. 7-80 defining the scope of the outside salesman exemption, as construed by the *Ramirez* court, is identical to the current exemption (as quoted above). *Compare Ramirez*, 978 P.2d at 9, 20 Cal. 4th at 795 (quoting IWC Wage Order No. 7-80, 2(I)), *with* Cal. Code Regs. tit. 8, § 11070(2)(J). *See also Ramirez*, 978 P.2d at 5 n.3, 20 Cal. 4th at 789 n.3 (noting that a wage order subsequent to Wage Order No. 7-80 "does not change Wage Order No. 7-80 in any respect pertinent to the issues discussed herein. The definition of 'outside salesperson' is unchanged.").

[5] The California Supreme Court later described *Ramirez* as having "reversed the Court of Appeal's ruling that the plaintiff was exempt under an IWC wage order defining 'outside salesperson,' largely because the court had inappropriately relied on certain federal regulations, which varied from California law, in making that determination." *Sav-On Drug Stores, Inc. v. Superior Court*, 96 P.3d 194, 206, 34 Cal. 4th 319, 336 (Cal. 2004).

18, 2007) ("Unlike the federal exemption . . . the California exemption is 'purely quantitative,' 'focusing exclusively on whether the individual works more than half the working time selling or obtaining orders for contracts.' [It] also differs . . . in that it does not allow for reclassification of non-exempt work which is incidental to sales.") (quoting and citing *Ramirez*, 978 P.2d at 9–10, 20 Cal. 4th at 797).

While the State Court of Appeal's holdings in *Monzon* and *Nordquist*, which pre-date *Ramirez*, may still stand for the principle that as a general matter FLSA interpretations provide persuasive guidance for interpretations of the California Labor Code, that principle clearly does not apply to the State's outside salesman exemption, which *Ramirez* specifically requires to be applied independent of FLSA interpretations. Therefore, contrary to Defendant's claim that the state and federal outside sales exemptions are "identical" (Def.'s Mem. Supp. at 3 n.2), *Ramirez* instructs that the analysis required when applying the State's exemption "depart[s]" from the analysis required under the FLSA exemption, *Ramirez*, 978 P.2d at 10, 20 Cal. 4th at 797. As a result, in relying on FLSA cases to apply the California outside salesman exemption, *Menes*, *D'Este*, *Barnick* and *Brody*[6] appear to have misapplied

---

[6] While *Brody* acknowledges the holding in *Ramirez*, it holds that *Ramirez* addressed a difference regarding the manner in which the State and federal laws "quantify[] the proportion of the employee's work that was sales work" and that because neither *Ramirez* nor other California caselaw "address[es] what it means to 'sell' within the context of Section 1171," that under *Monzon* and *Nordquist* FLSA cases still provide persuasive guidance for the definition of sales. *Brody* slip op. at 10. As this Court explains, however, *Brody* does not actually examine the FLSA's definition of "sale" located at 29 U.S.C. § 203(k) and 29 C.F.R. § 541.501(b). (*Infra*; *see also* Amended Ruling, slip op. at 9 (reciting FLSA definitions of "sale" or "sell").)

In addition, *Brody* appears to have based its analysis on that of *Barnick*, *see Brody* slip op. at 12–13, and describes *Menes*, *D'Este* and *Barnick* as "factually indistinguishable from the instant case," *Brody* slip op. at 3, such that this Court's rejection of *Menes*, *D'Este* and especially *Barnick* also counsels in favor of a rejection of *Brody*.

state law or to have applied "an improper hybrid of the state and federal methods." *Ramirez*, 978 P.2d at 10, 20 Cal. 4th at 798.

Even if this Court were to read the four California cases as applications purely of the FLSA—which they are not—they remain unpersuasive. First, while the four cases all hold that PSRs fit within the outside sales exemption, *Barnick* and *Menes* do not discuss the FLSA definitions of "sale" at all, and each concede that PSRs do not make "sales" as that term is generally understood. *Barnick* and *Menes* also do not clearly discuss the regulations' discussion of the role of an indicia-of-sales analysis in the outside sales exemption, and therefore contain no explicit construction of the exemption with which this Court's construction would be in conflict. Nonetheless, and without making any specific findings that the PSRs made sales, the *Barnick* and *Menes* courts found, on the basis of an indicia-of-sales analysis using factors culled from FLSA cases, that PSRs fall within the exemption. *Barnick*, 522 F. Supp. 2d at 1258 ("Plaintiff did not as a general matter directly sell any Wyeth products to physicians."); *Menes*, 2008 U.S. Dist. LEXIS 4230, *3–*4 ("Generally, Sales Reps do not sell Roche products to medical personnel in the classic sense").[7] By neglecting

---

[7] Both courts note, simply, that federal courts rely on indicia-of-sales to support findings that employees fit within the outside sales exemption. Notwithstanding the fact that *Barnick* and *Menes* rely on them, the cases that *Barnick* and *Menes* cite do not support a direct link between an indicia-of-sales analysis and a finding of exemption. Instead, they demonstrate no inconsistency with this Court's requirement that any employee within the exemption actually make sales. In particular, *Menes* relies on *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377 (6th Cir. 1970), which held that routemen delivering beverages to stores fall outside the exemption *despite* the fact that they might be considered to have made some sales, because such sales were not "of such regularity or frequency in relation to the delivery and stocking activities as to render the routemen salesmen." *See Klages Coal*, 435 F.2d at 383–84. And *Barnick* relies on *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 760 (W.D. Mich. 2003), which, as this Court noted in its ruling on summary judgment, "rested its holding that plaintiffs were exempt on the fact that the plaintiffs 'plainly consummated sales, directed their efforts toward the consummation of

to interpret the structure or scope of the outside sales exemption on the basis of the FLSA and its regulatory text, or to interpret the term "sale" at all, or to construe the FLSA's outside sales exemption narrowly, *Barnick* and *Menes* provide little analysis or "opinion," and are at odds with Second Circuit directives. *Cf. Bilyou*, 300 F.3d at 222*; Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 470 (S.D.N.Y. 2008) (observing, on the basis of Second Circuit precedent, that in construing FLSA outside sales exemption "the interpretation of the exemption rests on the plain meaning of the statutory and regulatory texts that define it") (citations omitted). Thus, these two cases do not persuasively demonstrate a "substantial ground for difference of opinion" on this issue.

Second, while *D'Este* is somewhat difficult to parse, if construed as an application purely of the FLSA outside sales exemption, one of two possible readings of that case shows that it is not inconsistent with this Court's observation of the exemption's inapplicability to employees who do not make sales. While *D'Este* does analyze the term "sale,"[8] the case on which it relies in doing so—which this Court addressed in its ruling on summary judgment (*see* Amended Ruling, slip op. at 19 n.5 & 21–22)—notes, as did this Court, that an employee cannot fall within the exemption unless she consummates sales. *See Nielsen*, 302 F. Supp. 2d at 759–60 ("an employee is involved in exempt sales activities if he consummates a sale, directs his activities toward consummating a sale that he himself makes, or obtains orders

_____

sales, took orders, or obtained commitments.'" (Amended Ruling, slip op. at 19 n.5 (quoting *Nielsen*, 302 F. Supp. 2d at 760).)

[8] Specifically, *D'Este* notes that a sale requires a "'buyer'" with "'the capacity to purchase or place an order for a product or service'" and a "'seller'" with "'the capacity to consummate sales, take orders, or obtain commitments from the buyer for the purchase of the employer's services.'" *D'Este*, 2007 U.S. Dist. LEXIS 87229, *13–*14 (quoting *Nielsen*, 302 F. Supp. 2d at 760).

or commitments from a purchaser") (analyzing FLSA regulations). Moreover, the plaintiff in *D'Este* testified that she "'would get a commitment'" from physicians "to prescribe Bayer products," and that she "'did actually sign [a] contract'" with a hospital to "use Bayer products on its formulary," *see D'Este*, 2007 U.S. Dist. LEXIS 87229, *4–*6 (quoting the plaintiff's testimony), which may have supported a finding by the *D'Este* court that the plaintiff made sales, *see id.* at *13–*15 (relying on fact that the plaintiff "was responsible for obtaining commitments from" physicians in "finding that [PSRs] are properly classified as 'outside salespeople'"). If read in this manner, *D'Este* reflects different facts rather than a discrepancy with this Court's construction of the exemption.[9]

    *D'Este* could also be read to employ the indicia-of-sales test *in lieu* of an examination of whether the plaintiff actually made sales.[10] And *Brody* must be read this way, in light of its express disagreement with what it called the plaintiff's "narrow interpretation of 'selling'" (under which his "primary contention . . . [wa]s that because he himself did not consummate sales, it cannot be said that he 'sells'") as well as its determination that "all of the indicia . . . lead to the conclusion that [the p]laintiff was an outside salesperson[.]" *Brody* slip op.

---

[9] This distinction between *D'Este* and the instant case illustrates that there may be material factual differences in how various pharmaceutical companies deploy PSRs, which feature also counsels against permitting Defendant to raise an interlocutory appeal because under § 1292(b) the "controlling question of law" to be decided on appeal must be "'a "pure" question of law that the reviewing court "could decide quickly and clearly without having to study the record."'" *Williston*, 410 F. Supp. 2d at 276 (citations omitted).

[10] *D'Este* may be read in this manner because its holding applying the outside sales exemption expressly rejected the plaintiff's argument "that the 'outside salesperson' exemption is inapplicable to [PSRs] because the [PSRs] only provide doctors with information and do not actually 'sel[l]' anything to those doctors." *D'Este*, 2007 U.S. Dist. LEXIS 87229, *11.

at 9–10 & 14–15.[11] Noting that California statutes, regulations and caselaw do not define "what it means to 'sell' within the terms of the California exemption," *Brody* concludes that it "may properly turn to federal law for guidance." *Id.* at 12. The "federal law" to which *Brody* looks, however, is not the statutory or regulatory text or caselaw defining "what it means to 'sell'" for purposes of the FLSA outside sales exemption, but rather two federal cases—*Nielsen* and *Barnick*—culling factors for an indicia-of-sales analysis. *See id.* In engaging in this indicia-of-sales analysis, *Brody* thus bypasses the question of what the FLSA term "sale" means and opts for a broad construction of the exemption.[12]

---

[11] The *Brody* court rejected the plaintiff's analysis of the exemption using the same rationale as Boehringer urges. The *Brody* court explained:

> [J]ust because [the p]laintiff and his physician customers did not literally exchange products for consideration does not mean that [the p]laintiff was not selling the products to the physicians. In the highly regulated field of prescription pharmaceuticals, it is physicians who control patients' ultimate access to, and purchase of, pharmaceuticals by writing prescriptions[.]

*Brody* slip op. at 15–16. This Court disagrees with Boehringer's and *Brody*'s rationale. As this Court explained above and in its Amended Ruling, the rule of narrow construction prevents courts from expanding the FLSA outside sales exemption's scope beyond DOL-imposed limitations to encompass pharmaceutical industry employees who do not actually make sales "just because" the regulations governing the pharmaceutical industry prohibit sales of drugs between PSRs and physicians. (*Supra*; Amended Ruling, slip op. at 30.) Indeed, contrary to the presumption apparently underpinning both *Brody* and Boehringer's arguments, it is possible for a company employing workers away from its place of business to operate in such a way that *none* of its employees fall within the FLSA's outside sales exemption.

[12] In fact, the *Brody* court acknowledges that its interpretation of the outside sales exemption is premised not on the term "sale," but rather on the "sales nature" or "sales quality" of the employee's work:

> [T]he fundamental *sales nature* of [the p]laintiff's employment is not diminished by the fact that [the p]laintiff *never literally exchanged pharmaceuticals for consideration*. To the contrary, [the p]laintiff "sold" products to physicians by inducing them to write prescriptions; obtained orders (prescriptions) from customers (physicians) by getting them to

14

Read this way, *D'Este* and *Brody*, like *Barnick* and *Menes*, fail to examine the statutory and regulatory language governing the exemption they apply, and all four cases involve expansive interpretations of the FLSA outside sales exemption rather than the narrow construction required in the Second and Ninth Circuits and under California law. *See Bilyou*, 300 F.3d at 222; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003) ("Following the Supreme Court's lead, we have also read FLSA exemptions . . . tightly, refusing to apply FLSA exemptions 'except [in contexts] plainly and unmistakably within the[ ] [given exemption's] terms and spirit.'") (ellipses added; other alterations in original; citations omitted); *Ramirez*, 978 P.2d at 8, 20 Cal. 4th at 794–95 (describing the "basic principle[]" that "under California law, exemptions from statutory mandatory overtime provisions are narrowly construed") (citations omitted). By failing to engage with the operative language of the FLSA—which this Court construes, based on the statute and regulations, to limit the indicia-of-sales analysis to determinations of what work is "incidental to and in conjunction with" outside sales actually consummated by an employee—or to construe the outside sales exemption narrowly, these four Central District of California cases (*D'Este*, *Barnick*, *Menes* and *Brody*) do not establish a meaningful ground for difference of opinion with this Court's

---

prescribe products to their patients; and obtained commitments from those physician/customers to prescribe those products. . . . Furthermore, *even though [the p]laintiff never consummated sales himself*, such sales were nevertheless considered "his own[.]" . . . That these sales are consummated indirectly does not take away from the inherent *sales quality* of [the p]laintiff's work.

*Brody* slip op. at 17 (emphases added). In relying on the "sales nature" and "sales quality" of the plaintiff's work, rather than a determination of whether he actually made or consummated sales, the *Brody* court employed a broad, rather than narrow, construction of the exemption that would run afoul of the Second Circuit's dictate.

application of the outside sales exemption.[13]

### C.    Regulations of the Department of Labor ("DOL")

#### 1.    29 C.F.R. § 779.241

Defendant's argument that "the definition of 'sale' must be construed broadly" (Def.'s Mem. Supp. at 4) references regulations and caselaw that address a wholly different portion of the FLSA than the outside sales exemption.

The FLSA states that "no employer shall employ any of his employees who . . . is employed in an enterprise engaged in commerce or in the production of goods for commerce" without paying overtime, 29 U.S.C. § 207(a)(1) and defines an "enterprise engaged in commerce or in the production of goods for commerce" to include any "enterprise that . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," § 203(s)(1)(A)(i).  In the language on which Defendant relies, the DOL refines the term "selling" within this jurisdictional provision to include any employee who "in any way participates in the sale of the goods." 29 C.F.R. § 779.241.  Thus, this regulation pertains to the liberally-construed scope of the FLSA vis-à-vis interstate commerce, not the narrowly construed outside sales exemption to its overtime pay requirement.

This construction is confirmed by the only two cases to cite or discuss § 779.241.  In

---

[13] The *Amendola* court also rejected *Menes*, *D'Este* and *Barnick*:
> These California decisions will not be followed here.  Of course, these cases apply California's labor laws, and not the FLSA.  More significantly, however, they do not acknowledge that the FLSA's exemptions must be narrowly construed against employers, or address the governing principles of statutory construction in grappling with the plain meaning of the regulatory term "sales."

*Amendola*, 558 F. Supp. 2d at 472.

the only case to construe that regulation, the Fifth Circuit explained that § 779.241 "pertains

to the enterprise *coverage* of the Act, not to the outside salesman *exemption*. Given the rule

that coverage provisions are to be liberally construed while exemptions are to be narrowly

construed, definitions for one purpose would seem ill suited to the other." *Wirtz v. Keystone*

*Readers Serv., Inc.*, 418 F.2d 249, 261 (5th Cir. 1969) (emphases in original). That court

further held that

> Under these circumstances, the more sensible result requires that the
> definition of "selling" contained in 29 C.F.R. [§] 779.241 be limited to
> matters concerning enterprise coverage under [29 U.S.C. § 203(s)]. To hold
> otherwise would be to engraft upon the [outside sales] exemption an
> interpretation which almost certainly was intended to apply only to the Act's
> *coverage*.

*Id.* (emphasis in original); *see also Wirtz v. Jernigan*, 405 F.2d 155, 157 (5th Cir. 1968)

(holding, in action to enjoin FLSA violations, that FLSA's statutory scope encompasses "the

total proceeds," not only commissions, of an entity that both operates a restaurant and sells

bus tickets on commission, and citing, but not relying on, § 779.241).

Thus, Defendant's reliance on this regulation to suggest that a substantial ground for

difference of opinion exists with respect to the Court's narrow construction of the outside

sales exemption is unavailing.

### 2. 2004 Rulemaking

The DOL's explanation of the outside sales exemption regulation, 29 C.F.R.

§ 541.503(a), reinforces the Court's construction of the FLSA as requiring that the employee

herself make sales before she could fall within the outside sales exemption. That provision

explains that "[p]romotional work that is actually performed incidental to and in

conjunction with an employee's own outside sales or solicitations is exempt work."

§ 541.503(a). The DOL provides two examples of this regulation's application. In one, "a

company representative who visits chain stores" but who "does not obtain a commitment for additional purchases" does not perform exempt work because the visits are not "incidental to and in conjunction with the employee's own outside sales." § 541.503(c). In rejecting a suggestion to eliminate the emphasis in that example on the requirement that the sales be the employee's "own," the DOL explained in a 2004 rulemaking that removal of that emphasis would imply, incorrectly, that an employee's work may be exempt even if it relates to some other employee's sales:

> [T]he Department does not intend to change any of the essential elements required for the outside sales exemption, including the requirement that the outside sales employee's primary duty must be to make sales or to obtain orders or contracts for services. *An employer cannot meet this requirement unless it demonstrates objectively that the employee, in some sense, has made sales.* . . . Extending the outside sales exemption to include all promotion work, whether or not connected to an employee's own sales, would contradict this primary duty test.

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees; Final Rule, 69 Fed. Reg. 22,122, 22,162 (Apr. 23, 2004) ("DOL Final Rule") (emphasis added). The DOL goes on to clarify that its use of the phrase "in some sense," which qualifies the requirement that the employee in question make sales, seeks to make irrelevant to application of the exemption recent "technological changes in how orders are taken and processed" including "whether it is the sales employee or the customer who types the order into a computer system and hits the return button," and that that phrase is not an expansion of the term "sale," the employee's making of which remains a prerequisite for her to fall within the exemption. *Id.* at 22,162–63.[14]

---

[14] Indeed, the DOL reiterated that "[e]mployees have a primary duty of making sales if they 'obtain a commitment to buy' from the customer and are credited with the sale." DOL Final Rule, 69 Fed. Reg. at 22,162. With reference to a Tenth Circuit case on which this Court also relied, the DOL then discussed with approval a longstanding DOL

Thus, the DOL's Final Rule emphasizes that an employee falls within the exemption only if she actually makes sales or obtains orders or contracts *and* if her "primary duty" is to do so. *Id.*; *see also* 29 C.F.R. § 541.500(a). Therefore, the DOL's regulations are consistent with the Court's holding "that if employees do not make any sales and do not obtain any orders or contracts, then they cannot fit within the outside sales exemption, because such work must be their 'primary duty.'" (Amended Ruling, slip op. at 9–10.) As a result, the regulations do not demonstrate the existence of a substantial ground for difference of opinion with respect to that exemption.

D.     *Discovery Ruling*

Finally, Defendant cites a ruling by Magistrate Judge Margolis regarding the proper scope of discovery to suggest that "there is even a substantial difference of opinion between the Court and its own Magistrate on this controlling issue." (Def.'s Mem. Supp. at 4.) Because Defendant takes quotations from the Discovery Ruling out of context to establish this purported difference of opinion where none exists, this Court finds Defendant's argument unpersuasive.

---

document explaining that "'[i]n borderline cases the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling. *If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt*[.]'" *Id.* at 22,163 (emphasis added) (quoting Report and Recommendations on Proposed Revisions of Regulations, Part 541, by Harry Weiss, Presiding Officer, Wage and Hour and Public Contracts Divisions, U.S. Department of Labor (June 30, 1949) at 83, and citing, *inter alia*, *Ackerman v. Coca-Cola Enters., Inc.*, 179 F.3d 1260, 1266–67 (10th Cir. 1999)).

   Inexplicably, the *Brody* court relies on this portion of the DOL Final Rule, including the language emphasized in this footnote, in construing the outside sales exemption not to require an employee to make "his own specific sales," even though the DOL Final Rule clearly rejects that construction. *See Brody* slip op. at 16–17.

Before Magistrate Judge Margolis was Defendant's Motion for a Protective Order [Doc. # 127] seeking to avoid producing organizational charts relating to the identification of "'which Boehringer employees take orders for, sell, collect money for, negotiate prices for and/or enter into contracts for the purchase of pharmaceutical products.'" (Discovery Ruling at 3 (quoting Pls.' Produc. Req. No. 53).) The parties' dispute was over whether Plaintiffs could obtain "'all evidence that [PSRs] do not make sales within the meaning of the outside sales exemption.'" (*Id.* at 6 (quoting Pls.' Opp'n to Def.'s Mot. for a Prot. Order [Doc. # 134] at 2).)

In granting Defendant's motion, the Magistrate Judge observed that even under Plaintiffs' proposed construction of the outside sales exemption, the information Plaintiffs had already acquired was sufficient to argue that they fell outside the exemption. She observed that Plaintiffs already knew, from the testimony of James Conklin, Boehringer's Executive Director of Human Resources for Prescription Medicines, that Boehringer's Trade Relations Group "'controls sales to Boehringer customers and that Trade Relations has employees who consummate Boehringer's sales,'" and that PSRs do not work or report up into that Group. (*Id.* at 5–6 (quoting same at 8).) In limiting discovery on this issue to the question of whether PSRs made their own sales, rather than how sales by non-PSR employees were consummated, Magistrate Judge Margolis explained:

> Evidence that "different employees negotiate and enter into contracts for the sale of pharmaceuticals to Boehringer's wholesale and retail customers" is not relevant to whether [P]laintiffs fall within the meaning of the outside sales exemption. . . .
>
> To determine whether a pharmaceutical representative's duty of "educating physicians" about [D]efendant's products is promotional work performed incidental to and in conjunction with the representative's own sales, or whether it is incidental to sales made by someone else, requires an examination of the sales work, or lack thereof, completed by the

> representative plaintiffs and need not extend to the duties of other employees who may or may not make the ultimate sale. In other words, either the plaintiffs are performing their own outside sales, or they are not. Who those employees are and where they are located in the company is not relevant to *the initial, critical inquiry of whether [P]laintiffs make the sales.*

(*Id.* at 6–7 (citations omitted; emphasis added).) In short, the Magistrate Judge held that evidence about PSRs' activities alone, rather than evidence about non-PSR Boehringer employees, was sufficient to establish that PSRs did not consummate sales and thus that the outside sales exemption did not apply to Plaintiffs. This holding is clearly consistent with this Court's construction of the outside sales exemption as requiring, as an initial matter, that an employee actually make or consummate sales as well as the Court's resting its holding with respect to the outside sales exemption on the PSRs' activities. Indeed, as Magistrate Judge Margolis specifically noted, the Discovery Ruling "is not altered by, *nor is it in opposition to*, [P]laintiffs' reliance on cases wherein courts recognize that the outside sales exemption does not apply to employees who do not actually make sales." (Discovery Ruling at 7 n.13 (emphasis added).)

Magistrate Judge Margolis then rejected Plaintiffs' argument that "'courts have considered evidence of the entire sales process, including the roles of other employees, when applying the outside sales exemption,'" observing that the *Menes*, *D'Este* and *Barnick* courts did not take account of evidence of sales activity by non-PSR employees. (Discovery Ruling at 8 (quoting Pls.' Opp'n to Def.'s Mot. for a Prot. Order at 11–12).) Given the dispute to which the Discovery Ruling was addressed, it is clear that Magistrate Judge Margolis did not rule on whether the outside sales exemption requires an employee actually to consummate sales, nor did she adopt, endorse, or find "persuasive" (Def.'s Mem. Supp. at 4) the *Menes*, *D'Este* and *Barnick* courts' construction of the outside sales exemption. Thus, the Discovery Ruling made no findings as to whether PSRs make "sales" as a matter of law and did not rule

21

on the exemption's applicability to Plaintiffs, and thus presents no substantial ground for difference of opinion.

### E.     Additional Caselaw

Within the Second Circuit the few cases applying the FLSA outside sales exemption do not manifest any difference of opinion with respect to this Court's construction and application of that exemption, either generally or vis-à-vis PSRs.

The Second Circuit has never addressed the issue of whether consummation of sales is a prerequisite for the outside sales exemption from overtime pay. In *McCluskey v. J.P. McHale Pest Mgmt.*, 147 F. App'x 203 (2d Cir. 2005), the only case in which the Second Circuit has addressed the outside sales exemption, the plaintiff acknowledged that he spent 60 percent of his time "'selling,'" and the question before that court was whether factual dispute remained as to what percentage of the plaintiff's work related to his sales work. *McCluskey*, 147 F. App'x at 205–06 (quoting district court opinion).[15]

---

[15] Having concluded that there were genuine issues of material fact as to the percentage of the plaintiff's work related to sales, the court vacated the district court's grant of summary judgment to the employer and remanded the case. *See McCluskey*, 147 F. App'x at 205–06.

The question of the percentage of the plaintiff's work related to his sales was relevant in *McCluskey* because that case involved a now-outdated version of the outside sales exemption that inquired into the percentage of an employee's time spent doing exempt and nonexempt work in determining whether she fit within the exemption. In 2004 the DOL revised this portion of the outside sales requirement to focus not on the percentage of time an employee spends on particular tasks, but instead on whether making sales is the employee's "primary duty." *See generally Amendola*, 558 F. Supp. 2d at 468 n.10 (S.D.N.Y. 2008) ("whereas the current definition of 'outside salesman' requires that the 'primary duty' of the employee involve 'making sales' or 'obtaining orders,' the prior version of the regulation used a cumbersome, percentage-based definition"). Because the question of *whether* an employee consummates or makes sales is antecedent to questions about *how much* of her work relates to such sales, the 2004 revisions to the DOL regulations do not impact this Court's analysis. *See id.* The DOL's explications of the regulations (which the 2004 revisions gave the DOL occasion to

In fact, the Court's research reveals only one federal court decision, *Amendola*, applying the FLSA's outside sales exemption to pharmaceutical sales representatives. The facts in *Amendola* are similar to those here: Bristol-Meyers Squibb's representatives promoted and provided extensive information about the company's drugs to physicians but did not obtain commitments from them for particular prescriptions, and the PSRs were required to be in the field visiting healthcare professionals or preparing for such visits for almost all of their working hours. *Amendola*, 558 F. Supp. 2d at 463–65. (The *Amendola* court abbreviated the term "pharmaceutical representatives" as "PRs," and they are equivalent to the PSRs in this case.) The *Amendola* court concluded that pharmaceutical representatives likely[16] did not fall within the outside sales exemption:

> Influencing physicians to prescribe [Bristol-Meyers Squibb] drugs to patients or even obtaining non-binding "commitments" from the physicians to do so does not constitute a "sale, exchange, contract to sell, consignment for sale,

---

publish) are, however, helpful in focusing the analysis required under the outside sales exemption.

The district court in *McCluskey* had applied the prior version of the regulation because the regulation became effective after the case was "fully submitted for decision." *Compare McCluskey v. J.P. McHale Pest Mgmt.*, No. 03 Civ. 3636 (CLB), 2004 U.S. Dist. LEXIS 28431, *1 (S.D.N.Y. Sept. 9, 2004) (the case was "fully submitted for decision on August 20, 2004"), *with* DOL Final Rule, 69 Fed. Reg. at 22,122 ("These rules are effective on August 23, 2004.").

[16] Because under the FLSA a court may refuse to authorize notice to be sent to potential plaintiffs in a certified class action if the defendant establishes that it will likely win at trial on the merits, *Amendola*, 558 F. Supp. 2d at 467 & n.9, the question before the *Amendola* court was the *likelihood* that the defendant could establish at trial that at least one of various FLSA exemptions applied to its employees, rather than whether a definite legal conclusion could be made that the exemptions were applicable. (*See* Amended Ruling, slip op. at 39 & n.15 (observing this aspect of *Amendola*).) The court found it unlikely that the outside sales exemption would apply, *Amendola*, 558 F. Supp. 2d at 468–72, but likely that the administrative exemption would, *id.* at 472–77, and therefore refused to authorize notice, *id.* at 480.

[or] shipment for sale" as these terms from 29 U.S.C. § 203(k) are customarily understood. . . .

The catch-all phrase "or other disposition," which completes the statutory definition of the terms "sale" and "sell," *see* 29 U.S.C. § 203(k), does not expand the definition to encompass promotional work by PRs. . . .

The conclusion that the promotional work by PRs does not constitute a sale is unsurprising since the parties agree that medical providers do not purchase [Bristol-Meyers Squibb] products from PRs and that federal law prohibits PRs from selling pharmaceutical products. . . .

*Amendola*, 558 F. Supp. 2d at 470–71.

Moreover, rejecting the defendant's reliance on cases invoking the indicia-of-sales analysis, *Amendola* explained that "the question is not—as it is here—whether the employees make sales at all, but whether their work *primarily* consists of making those sales." *Id.* at 472 (emphasis in original). By distinguishing between indicia-of-sales cases, in which the question is about whether engaging in exempt activity (i.e., making sales) was the employees' *primary duty*, and cases in which the parties dispute whether the employee ever made sales at all, which determines whether the outside sales exemption may even be considered *ab initio*, the *Amendola* court, like this Court, held that an employee must actually make sales before she might fall within the exemption.

As a result, the Court's review of additional caselaw does not establish a basis on which to conclude that a substantial ground for difference of opinion exists with respect to its construction of the outside sales exemption or to its holding that PSRs do not make sales for purposes of that exemption.

### III.    Conclusion

For the reasons stated above, Defendant has not met its burden of demonstrating that a substantial ground for difference of opinion exists as to the Court's construction of the outside sales exemption or its holding that Plaintiffs do not make sales. Therefore, Defendant's Motion for Permission to Take Interlocutory Appeal from Order Denying Summary Judgment [Doc. # 182] is DENIED.


IT IS SO ORDERED.


        /s/
_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 17th day of November, 2008.